# Constitutionality of Legislation Extending Federal Grants to Students at Nonpublic Schools

Views expressed in earlier opinion, that extension of Basic Educational Opportunity Grants to students enrolled in nonpublic elementary and secondary schools would violate Establishment Clause of the First Amendment, reconsidered and reaffirmed.

May 29, 1980

## MEMORANDUM OPINION FOR THE ATTORNEY GENERAL

In a letter of April 25, 1980, the Secretary of Education requested your opinion on the constitutionality of S. 1101, a bill to extend Basic Educational Opportunity Grants (BEOG) [1] to students enrolled in private elementary and secondary schools. Attorney General Bell, in a letter of March 17, 1978, to the then Secretary of Health, Education, and Welfare, concurred in the conclusions expressed in the attached March 16, 1978, opinion of this Office on a similar bill. [2 Op. O.L.C. 77 (1978).] Attorney General Bell concluded that such extension of these grants to students enrolled in nonpublic elementary and secondary schools would be unconstitutional. We have reconsidered our earlier views and believe that subsequent Supreme Court decisions confirm our conclusions. This memorandum supplements the views expressed in our March 16, 1978, opinion.

The BEOG program, as it now operates, provides grants to certain needy students enrolled in institutions of higher education. S. 1101 would make students enrolled in private elementary and secondary schools eligible for these grants.

In order for a statute to survive Establishment Clause scrutiny, it must have a secular legislative purpose; it must not have a primary effect that either advances or inhibits religions; and it must not foster an excessive entanglement with religion. *Lemon* v. *Kurtzman,* 403 U.S. 602, 612 (1971). This test has been repeated in every significant Supreme Court decision in this area during the last decade. There is no evidence in cases decided by the Supreme Court since our earlier memorandum that this three-part test has been altered in any significant way.

[1] 20 U.S.C. § 1070a (1976), *as amended by* 20 U.S.C. § 1070a (Supp. II 1978).

Applying that test to the BEOG bill now under consideration in the Senate, we remain of the view that while the program envisoned in that bill might be found to have a neutral, nonreligious purpose, it would be struck down, nonetheless, because it has a primary effect that advances the religious mission of sectarian elementary and secondary schools.

The programs appears to be virtually indistinguishable from that considered by the Congress two years ago and is not constitutionally distinguishable from those tuition grant programs struck down in *Committee for Public Education* v. *Nyquist,* 413 U.S. 756 (1973), and a companion case, *Sloan* v. *Lemon,* 413 U.S. 825 (1973).

In *Nyquist,* the Court found that the New York program of tuition reimbursement to parents of children attending nonpublic elementary or secondary schools and a tax deduction provision had a primary effect of advancing religion. Likewise, a similar Pennsylvania tuition reimbursement program was invalidated in *Sloan*. The Court made clear in these cases that it would strike down unrestricted grants to sectarian elementary and secondary schools, even if given indirectly by payments to the parents rather than the schools, *see Sloan* v. *Lemon,* 413 U.S. at 832, because such funds could be used to promote the religious mission of the schools. The Court in *Nyquist* noted that whether the funds are provided as reimbursement for tuition paid in past years or as grants for the current year is of no constitutional significance. 413 U.S. at 786-87. Nor does it matter whether the payment is made to the students rather than to the parents because "the Court look[s] beyond the formal recipient of the aid" to its primary effect of supporting the sectarian schools. *See National Coalition for Public Ed.* v. *Harris,* 489 F. Supp. 1248, 1259 (S.D.N.Y. 1980), *citing Sloan* v. *Lemon,* 413 U.S. at 832.

Recent Supreme Court decisions do not question *Nyquist* and *Sloan*. Just last term, the Court summarily affirmed *Beggans* v. *Public Funds for Public Schools,* 442 U.S. 907 (1979). The Third Circuit in *Beggans* relied heavily on *Nyquist* to strike down a New Jersey program of tax exemptions for parents of children enrolled in nonpublic elementary and secondary schools. 590 F.2d 514 (3d Cir. 1979). The court found that:

> Even if parents of dependents in nonpublic schools do have greater expenses than those supporting dependents in public schools, the State may not "equalize" the burden by granting a benefit only to taxpayers with dependents in private or parochial schools. *Nyquist* explicitly forecloses the argument that the State may deny an exemption to the parents of students in public schools but may grant an exemption to parents of students in nonpublic schools, on the supposition that this differing treatment may tend to equalize the two classes of parents in their educational expenditures.

> Inasmuch as New Jersey's exemption denies to parents of public school students a benefit granted to parents of students in nonpublic schools, the exemption is not saved because a similar provision applies to parents of college and university students, including those in public institutions.

*Id.* at 519–20 (citations deleted). *Beggans* noted that *Nyquist* held that the tax exemption and tuition reimbursement programs each independently violated the Constitution. *Id.* at 520. As in the New Jersey program before the court in *Beggans,* the fact that the BEOG program is available to students in institutions of higher education does not make it a comprehensive and neutral scheme more similar to the property tax exemption for real property owned by religious organizations and used for religious purposes upheld in *Walz* v. *Tax Commission,* 397 U.S. 664 (1970).

This term the Supreme Court upheld a New York statute that directs the reimbursement of nonpublic schools for the costs incurred in administering state-mandated testing and certain other administrative activities. *Commission for Public Education and Religious Liberty* v. *Regan,* 444 U.S. 646 (1980). The Court concluded that although sectarian schools received this aid along with secular private schools, the statute does not have a primary effect that advances religion. The funds go to clearly identifiable secular services. The Court compared the testing program in *Regan* with that upheld in *Wolman* v. *Walter,* 433 U.S. 229, 240–41 (1977), and found that since the school has no control over the content of the tests, they could not be used for religious educational purposes. The Court noted:

> if the grading procedures could be used to further the religious mission of the school, serious Establishment Clause problems would be posed under the Court's cases, for by furnishing the tests it might be concluded that the State was directly aiding religious education.

444 U.S. at 657. The administrative costs for which schools were reimbursed were also found to be separable and not related to the teaching function.

*Regan* does not purport to call into question the direct precedent in *Nyquist* and *Sloan* that tuition reimbursement programs are unconstitutional. Tuition finances all aspects of a nonpublic school's program, including the teaching and general religious education function of sectarian schools. Reimbursement thus would have a primary effect of advancing the religious mission of the schools.[2] Tuition reimbursement

---

[2] The Supreme Court has developed a presumption that aid to the teaching aspects of sectarian elementary and secondary schools has a primary effect of advancing the religious mission of the

Continued

650

cannot be equated with the clearly segregated secular activities upheld in *Regan*.[3]

JOHN M. HARMON
*Assistant Attorney General*
*Office of Legal Counsel*

---

schools because their educational function is pervasively sectarian; *viz.,* there is no clearly segregated secular educational function. *See, e.g., Meek* v. *Pittenger,* 421 U.S. 349, 365–66 (1975); *Lemon* v. *Kurtzman,* 403 U.S. 602, 617–19 (1971). The Court has not applied a similar presumption to institutions of higher education, *see, e.g., Tilton* v. *Richardson,* 403 U.S. 672 (1971), and therefore statutory schemes such as the BEOG program are defensible at the college and university level.

A three-judge district court has recently upheld a program of remedial and counseling services in the New York City sectarian elementary and secondary schools. *National Coalition for Public Ed.* v. *Harris,* 489 F. Supp. 1248 (S.D.N.Y. 1980) (*"PEARL"*). After taking extensive evidence on the operation of the fourteen-year program and the nature of the schools services, the court found that the New York City schools were not pervasively sectarian. *Id.* at 1260–65. The court then analyzed the regulations and history of the program and found that it did not have a primary effect of advancing the religious mission of the schools. We cannot predict, of course, whether the Supreme Court will adopt this approach. It cannot be applied to an analysis of S. 1101 on its face because there is no restriction in the bill that to be eligible students must attend schools that are not pervasively sectarian. Furthermore, the *PEARL* decision must be distinguished from analysis of the BEOG program because here we do not have a record of operation over many years to assure a court that "the result feared in other cases has not materialized." *Id.* at 1265. Most importantly, a decision on a discrete, carefully regulated public-school-within-a-sectarian-school Title I program does not have precedential value for a tuition reimbursement program that funds any aspect of the sectarian training. *PEARL* distinguished Title I from the statutes before the Court in *Nyquist* and *Sloan:*

> The program is therefore not comparable to a tuition reimbursement or tax break offered only to parents of private school students because it does not relieve the schools' financial burdens or supply funds free from use limitations and is not limited to a small class of beneficiaries.

*Id.* at 1260.

[3] The Supreme Court has found it unnecessary to analyze the third prong of the Establishment Clause test—the potential for administrative entanglement—in a case where it held that a tuition reimbursement program has a primary effect of aiding religious elementary and secondary schools. *Committee for Public Education* v. *Nyquist,* 413 U.S. 756, 794 (1973).

651